775 F.2d 535
 54 USLW 2246, 3 Fed.R.Serv.3d 109
 EAVENSON, AUCHMUTY & GREENWALD, a Pennsylvania Professional
Corporation,
v.
Michael HOLTZMAN, et al. individually and as Trustee for
Gibson, N.V.; Gibson, N.V.: A Netherlands Antilles
Corporation; Jacques Trempont, individually and as Trustee
for Gibson, N.V.; Claude A. Antille, individually and as a
Managing Director of Gibson, N.V.; John Doe representing
all of the parties in interest of Gibson, N.V.; Christoffer
Smeets, individually and as Director of Curacao Corp. Co.
N.V.; Eugene Bruinendael, individually and as Director of
Curacao Corp. Co. N.V.; Henricul De Rooid, individually and
as Director of Curacao Corp. Co. N.V.; Cornelius Lind,
individually and as Director of Curacao Corp. Co. N.V.
v.
Edward H. GREENWALD, Sr., et al., Edward H. Greenwald, Jr.,
William Sumner Scott, and Lebon Walker,
Third-Party Defendants.
Appeal of William Sumner SCOTT.
 No. 84-3705.
 United States Court of Appeals,
Third Circuit.
 Submitted Pursuant to Third Circuit
Rule 12(6)
June 14, 1985.
Decided Oct. 25, 1985.
 
 David J. Humphreys, Humphreys, Nubani & Short, P.C., Pittsburgh, Pa., for appellant.
 William Sumner Scott, Joseph A. Vater, Jr., Meyer Unkovic & Scott, Dennis St. J. Mulvihill, Robert J. Cindrich, Mansmann Cindrich & Huber, Pittsburgh, Pa., for appellee.
 Before HIGGINBOTHAM and BECKER, Circuit Judges, and LACEY, District Judge.*OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This case presents the question whether we have appellate jurisdiction over an order of a district court imposing a monetary sanction against an attorney pursuant to Fed.R.Civ.P. 11 where the sanctionee has since withdrawn his appearance in favor of substituted counsel and the district court has not yet entered a final judgment in the underlying action. For the reasons that follow, we conclude that the district court's order is appealable as a collateral order under 28 U.S.C. Sec. 1291 (1982). We further conclude that the district court's ruling upon which the sanction order was based was ambiguous; hence, the imposition of sanctions upon counsel for failing to conform to the court's understanding of the order constituted an abuse of discretion. We therefore reverse.
 
 I.
 
 2
 For this court to entertain the present appeal, the jurisdictional requirements of 28 U.S.C. Sec. 1291 must be met.[1] Section 1291 provides that courts of appeal may review only "final" decisions of the district courts. The Supreme Court has, however, established a narrow exception to the rule of finality. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under Cohen and its progeny, "a decision of a district court is appealable if it falls within 'that small class [of pre-judgment orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.' " Mitchell v. Forsyth, --- U.S. ----, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (citing Cohen, 337 U.S. at 546, 69 S.Ct. at 1225); Richardson-Merrell, Inc. v. Koller, --- U.S. ----, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). For an order to be collateral, therefore, it must meet the following three-part test: the challenged order must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). Construing the collateral order doctrine narrowly, we have required that each of the three independent requirements be met before appellate review is permitted. Metex Corp. v. ACS Industries, Inc., 748 F.2d 150, 153 (3d Cir.1984); Lusardi v. Xerox Corp., 747 F.2d 174, 177 (3d Cir.1984); Gross v. G.D. Searle & Co., 738 F.2d 600, 602 (3d Cir.1984); Yakowicz v. Commonwealth of Pennsylvania, 683 F.2d 778, 783 (3d Cir.1982). This showing is necessary in order to further the important congressional goal of avoiding piecemeal litigation. Gross, 738 F.2d at 604.
 
 
 3
 The sanctions order under appeal in this case was entered on October 5, 1984, when the district court granted the defendant's motion for attorneys fees and costs under Rule 11[2] and imposed sanctions against appellant William Sumner Scott, Esquire, personally in the amount of $1,642.50.[3] Appellant promptly withdrew as counsel for plaintiff Eavenson Auchmuty & Greenwald, Inc., on whose behalf he had filed and litigated to that point a suit for defamation and tortious interference with business against a number of foreign defendants. Scott then filed a motion for new trial or for alternative relief and stay pursuant to Fed.R.Civ.P. 62(b) and (d), which was denied by the district court on October 16, 1984. On October 30, 1984, he filed a notice of appeal. Eavenson Auchmuty & Greenwald then obtained new counsel and the underlying action continued to be litigated in the district court. Appellant is no longer associated with the case in any capacity.[4]
 
 
 4
 Given these facts, this present appeal presents a jurisdictional question of first impression in this court. In a similar case, Eastern Maico Distributors v. Maico-Fahrzeugfabrik, 658 F.2d 944 (3d Cir.1981), we declined to exercise jurisdiction over an appeal from a non-final order of the district court pursuant to Fed.R.Civ.P. 37[5] which imposed a monetary sanction against the defendant's attorney personally for filing repeated and dilatory requests for the production of documents. However, the order appealed in Eastern Maico clearly failed to satisfy two of the three Cohen criteria. First, the sanctioned activity was not completely collateral to the underlying action; in order to address the question of whether the documents requested were truly relevant, we would have had to examine the claims underlying the litigation and reach some conclusion as to the relative importance of the material repeatedly requested by the appellant. Second, the sanction order could have been effectively reviewed on appeal from final judgment, since the parties to the order would still have been before the court and would still have retained the same interest in challenging the order. 658 F.2d at 947.
 
 
 5
 In contrast, there can be no dispute that the first two prongs of the Cohen test are met in this appeal. The sanctions order challenged by Scott finally and conclusively determines the sanctions issue, and the resolution thereof is completely separate from the merits of the case as our discussion of the sanctions order, see discussion infra at part II.B., will make clear.[6] What is at issue therefore is the effective reviewability of the issue on appeal from final judgment, and, on that score, the circumstances which compelled our decision in Eastern Maico are absent in the case at bar.
 
 
 6
 We must determine, therefore, whether the appeal brought by Scott meets the third requirement for collateral orders--that the sanctions order would be effectively unreviewable on appeal from a final order in the litigation period. We note first that the circumstances that compelled our conclusion in Eastern Maico, that effective appellate review of the Rule 37 order would be possible following final judgment, are absent in this appeal. Unlike Eastern Maico, where the appeal was taken by both the sanctioned attorney and the party, the instant appeal is taken only by the sanctioned attorney, who has since withdrawn as counsel in the underlying action. Because appellant Scott is no longer connected with the merits of the case, he has an immediate interest in challenging the sanction which is not shared by the parties to the suit or by counsel to a party. First, the possibility exists that appellant's former client may ultimately prevail on the merits, or settle the case; in either of those situations, it is not clear that appellant would be able to appeal from final judgment. Second, it is quite possible, even likely, that appellant, as a non-party, may be unaware that the suit has been terminated so as to be able to file a timely appeal. Thus, appellant might never be able to receive any appellate review of the sanctions order if he is denied that opportunity now.
 
 
 7
 Based upon similar considerations, the Seventh Circuit recently accepted the proposition that an order assessing attorney's fees against a party's former counsel was effectively unreviewable on appeal from final judgment, and that, provided the other two requirements of Cohen were satisfied, such a sanction could be immediately appealed by counsel as a collateral order. See Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223 (7th Cir.1984). We find the reasoning of the Seventh Circuit, which is limited to a sanction order against a party's former counsel who has withdrawn from representation at the time of appeal, to be persuasive.
 
 
 8
 A conclusion that the Rule 11 sanction order against Scott is an appealable collateral order is also supported by prior decisions of this court, establishing the principle that contempt sanctions against non-parties may be appealed immediately. In Eastern Maico, we stated that
 
 
 9
 [i]n civil contempt proceedings or Rule 37(b) sanctions against a non-party, even against an attorney to or an officer of a party, an appeal generally need not wait until final judgment in the case as a whole. See In re Fish & Neave, 519 F.2d 116 (8th Cir.1975) (attorney may appeal civil contempt sanction); David v. Hooker, Ltd., 560 F.2d 412, 416-17 (9th Cir.1977) (officer of party may appeal Rule 37(b) sanction for violation of discovery order).
 
 
 10
 658 F.2d at 949. Other decisions, relying upon Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), have held that a non-party witness adjudicated in contempt of a district court order has an immediate right of appellate review. See Gross v. G.D. Searle & Co., 738 F.2d 600, 603-04 (3d Cir.1984); DeMasi v. Weiss, 669 F.2d 114, 122 (3d Cir.1982). Finally, a non-party, unlike a party, may immediately appeal a contempt sanction under Sec. 1291 because the progress of the underlying litigation is not impeded and because the non-party may not be notified of a final judgment in the case or may lack standing to appeal that judgment. See, e.g., Liew v. Breen, 640 F.2d 1046, 1048 (9th Cir.1981); ITT Community Dev. Corp. v. Barton, 569 F.2d 1351, 1352 n. 1 (5th Cir.1978). See also Eastern Maico, 658 F.2d at 949-50. We conclude that appellant's position as a non-party to the underlying action has placed him in a predicament similar to that of the non-party witness who has been sanctioned for civil contempt, i.e., the challenged order is effectively unreviewable on appeal from a final judgment.
 
 
 11
 Accordingly, based on the jurisprudence of the Seventh Circuit and cases in this circuit holding that sanctions against non-parties may be appealed immediately, we hold that where, as here, counsel has withdrawn from a case in which he has been sanctioned, and the sanction order is itself final and sets forth issues separable from the merits, the requirements of Cohen have been met, and the Rule 11 sanction order is appealable as a collateral order. We do not now adopt a rule that would allow immediate appellate review of any sanction order imposed upon counsel, whether counsel has withdrawn from the case or not;[7] rather, our holding today is narrow and limited to the facts of the case presented.
 
 II.
 A.
 
 12
 In considering the imposition of a penalty upon attorneys, we have cautioned that "like 'other sanctions, attorney's fees should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.' " Eash v. Riggins Trucking, Inc., 757 F.2d 557, 570 (3d Cir.1985) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980)). The district court must exercise discretion and sound judgment in dealing with the myriad methods with which lawyers may abuse the judicial process. 757 F.2d at 568. On review, the question is not whether the reviewing court would have applied the sanction, but whether the district court abused its discretion in so doing. See National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976).
 
 
 13
 Recent amendments to Fed.R.Civ.P. 11 now authorize sanctions to be imposed upon an attorney who violates his or her certification that good grounds support his or her pleading and that the pleading is not interposed for delay. See Walsh v. Schering-Plough Corp., 758 F.2d 889, 895 (3d Cir.1985). The standard for testing conduct under amended Rule 11 is reasonableness under the circumstances, a more stringent standard than the original good-faith formula. Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.P. 11. Thus, subjective bad faith is no longer a predicate to a Rule 11 violation; the test is now an objective one of reasonableness. Westmoreland v. CBS, Inc., 770 F.2d 1168 (D.C.Cir.1985); In re TCI Limited, 769 F.2d 441 (7th Cir.1985); Davis v. McGraw-Edison Company, 765 F.2d 494 (5 Cir.1985); Eastway Construction Corp. v. City of New York, 762 F.2d 243 (2 Cir.1985); Elliott v. Perez, 751 F.2d 1472 (5th Cir.1985). See also Schwarzer, Sanctions Under the New Federal Rule 11--A Closer Look, 104 F.R.D. 181 (1985). However, in exercising its discretion, the district court "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Notes of Advisory Committee on Rules, supra (emphasis added). Finally, "if either party's bad faith is determinative of whether attorney's fees should be awarded [under Rule 11], then the parties should be given an opportunity to present appropriate submissions on that issue." Rubin v. Buckman, 727 F.2d 71, 73 (3d Cir.1984).
 
 
 14
 In this litigation, the factual and procedural scenario out of which the district court's sanction order emerged is quite complicated. We turn therefore to a detailed recitation of the factual and procedural history of the case as it bears on the sanctions issue.
 
 B.
 
 15
 On April 5, 1984, appellant Scott filed a complaint on behalf of the plaintiff in the United States District Court for the Western District of Pennsylvania. The gravamen of the original complaint was that defendant Michael Holtzman, acting as an agent for two foreign defendant corporations located in the Netherlands Antilles, Gibson, N.V., and Curacao Corp. Co., N.V., deposited money in a Pennsylvania bank, engaged the services of plaintiff, and then committed intentional acts of defamation and tortious interference with business upon plaintiff. Based upon information obtained from a private investigator, appellant also named as defendants one trustee for Gibson, N.V., Jacques Tremport, and four directors of Curacao Corp. Co., N.V., Christopher Smeets, Eugene Bruinendael, Henricul De Rooid and Cornelius Lind.
 
 
 16
 On June 1, 1984, Curacao Corp. Co., N.V.; and Smeets, Bruinendal, De Rooid and Lind (the "Curacao defendants") moved to dismiss plaintiff's complaint against them for lack of personal jurisdiction. The Curacao defendants alleged, inter alia, that "[a]ny activities [the Curacao] defendants performed in connection with defendant Gibson N.V. were done solely in their capacity as managing directors of Curacao Corporation Company N.V. and [could] not be used as a basis for the exercise of in personam jurisdiction over them." Appellant, on behalf of his client, filed a timely reply to the Curacao defendants' motion to dismiss, averring that, as managing directors of Gibson, N.V., the Curacao defendants were responsible for the intentional tortious activity of Gibson, N.V., as perpetrated through its agent or employee, Holtzman, and that Gibson, N.V., was "a shell corporation established for the principal purpose of concealing the identity of the real parties in interest."
 
 
 17
 On July 2, 1984, the Curacao defendants requested leave to file a response to appellant's Reply to the Motion to Dismiss. The district court granted the leave and on July 13, 1984, the Curacao defendants submitted a reply memorandum of law in further support of their motion to dismiss. In their memorandum of law, the Curacao defendants explained the corporate structures of Curacao Corp. Co., N.V., and Gibson, N.V., under Netherlands Antilles Law; stated that Curacao merely provided "local management services" to businesses incorporated under the laws of the Netherlands Antilles, such as Gibson, N.V.; and averred that, under Netherlands Antilles law, Gibson, N.V., could be bound only by any of its managing directors acting individually. The Curacao defendants disavowed any knowledge of the activities of Michael Holtzman and Gibson, N.V., in the United States, and alleged that "it was Claude A. Antille [a managing director for Gibson, N.V.] acting alone who ratified the appointment of Michael Holtzman as an agent for Gibson, N.V."
 
 
 18
 Based upon this information, on July 20, 1984, appellant filed a Motion to Amend Complaint which sought to delete the Curacao defendants named in paragraphs 6-10, and insert one new defendant, Claude A. Antille. Exhibit "A" to appellant's Motion proposed new paragraphs 6-10 as follows:
 
 
 19
 6. Defendant, Claude A. Antille, is a citizen of Switzerland, whose principal residence is Avenue Champel 26-1206, Geneva, Switzerland.
 
 
 20
 7. Gibson, N.V. has engaged in the commission of intentional tortious action within the Western District of Pennsylvania at the direction and for the benefit of Claude A. Antille, Jacques Trempont, Michael Holtzman and other unidentified persons.
 
 
 21
 8. Through discovery, Plaintiff plans and intends to identify such presently unidentified persons and add them as parties to this action and preserves such right by the inclusion of John Doe as Defendant.
 
 
 22
 Paragraphs 9 and 10 are intentionally left blank.
 
 
 23
 Appellant also attached a draft order which requested that amendment be granted "without prejudice to a claim for attorneys fees and costs to Plaintiff from [the Curacao] Defendants."
 
 
 24
 On July 26, 1984, the district court entered the following Order:
 
 
 25
 IT IS HEREBY ORDERED that said Motion is GRANTED in that plaintiff is hereby granted leave to amend the complaint in accordance with Exhibit A attached to the Motion, except that no amendment of paragraphs 8, 9, 10 of the complaint is permitted. (emphasis in original).
 
 
 26
 In apparent compliance with this Order, an Amended Complaint was filed on July 31, 1984, which conformed to Exhibit A of appellant's motion, except that paragraphs 8, 9 and 10 of the original complaint, and the Curacao defendants named therein were retained. On the same date, July 31, 1984, appellant filed a Motion for Attorneys Fees and Costs from the Curacao defendants, alleging that "[t]he filing of the Motion to Dismiss by the [Curacao defendants on June 1, 1984] was designed to intentionally mislead and defraud the Plaintiff from its opportunity to bring this cause of action against C.A. Antille and any other [real] party in interest."[8] The district court denied appellant's motion for attorney's fees and costs by order dated August 2, 1984.
 
 
 27
 Subsequently, on August 14, 1984, the Curacao defendants named in paragraphs 8, 9 and 10 of the original complaint filed a motion to strike and for attorneys fees pursuant to Fed.R.Civ.P. 11[9] and 28 U.S.C. Sec. 1927,[10] alleging that their retention in the amended complaint violated the district court's July 26, 1984 Order. The district court agreed, and on August 16, 1984, granted defendant's motion to strike and ordered plaintiff to file a second amendment to the complaint in conformance with the July 26, 1984, Order. Appellant immediately filed a second amendment to complaint, which deleted paragraphs 8-10, and the defendants named therein, in their entirety.
 
 
 28
 On September 19, 1984, a hearing was held concerning defendants' motion for attorney's fees and costs. The central controversy involved interpretation of the district court's July 26, 1984, Order. The district court stated that language in the Order which provided for "no amendment of paragraphs 8, 9 and 10 of the complaint" clearly referred to the court's rejection of paragraphs 8, 9 and 10 of the proposed amended complaint, attached as Exhibit A to the motion to amend, and was not a direction to retain paragraphs 8, 9 and 10 of the original complaint, and that the clear intent of his Order was that the defendants named in paragraphs 6-10 of the original complaint be deleted as proposed by appellant in his Motion to Amend.[11] Appellant argued that he misunderstood the Order in this regard, believing instead that the order had referred to paragraphs 8-10 of the original complaint. Appellant further explained that he believed that the intent of the order was to retain jurisdiction over the defendants named in those paragraphs to permit a later claim for attorney's fees and costs against them, as proposed by appellant in his draft order.[12]
 
 
 29
 The district court rejected this interpretation as "irrelevant," concluding that there was "no reasonable basis for that mistake" and that appellant was guilty of "harassment." The district court stated further that he could not "look at [the] situation in isolation," referred to "a lot of problems ..., a lot of motions and a lot of harassment" which the district judge had encountered with appellant in another case, docketed at Civil Action 82-2366,[13] and imposed sanctions against appellant.
 
 C.
 
 30
 In sum, the district court's decision to sanction appellant was based solely upon the district court's perception that appellant had willfully and deliberately violated the terms of its order granting appellant leave to amend his complaint.[14] However, our examination of that order, especially in light of the surrounding facts and procedural history, leads us to conclude that appellant could reasonably have misread it.
 
 
 31
 At the time appellant filed the pleading at issue, he had been granted "leave to amend [his] complaint in accordance with Exhibit A attached to [his] Motion, except that no amendment of paragraphs 8, 9, 10 of the complaint [was] permitted." In apparent compliance with that directive, appellant submitted an amended complaint which retained paragraphs 8, 9 and 10 of the original complaint. However, at the subsequent Rule 11 hearing, the district court specified that the actual intent of its July 26, 1984, order was to permit amendment of paragraphs 8, 9 and 10, but not as proposed by appellant in Exhibit A of his Motion, an intent which was at least arguably not evident from the face of the order.
 
 
 32
 During the hearing, appellant explained that he had misunderstood the district court's order, and stated that he believed that the intent of the Order at the time it was issued was to retain jurisdiction over certain of the Curacao defendants to permit a claim for attorney's fees and costs to be brought against them. Appellant pointed out that, based upon his understanding of the order, he filed a motion for attorney's fees and costs against the Curacao defendants on the same day that he filed his amended complaint.[15] Moreover, appellant argued that his good faith was exhibited by the immediate filing of a second amended complaint once the district court's true intent became clear.[16] Nevertheless, the district court rejected appellant's explanation that he had simply misunderstood the order, finding that no reasonable basis could exist for any such misinterpretation. In the district court's opinion, appellant's conduct amounted to "harassment" sufficient to warrant a Rule 11 sanction. We disagree.
 
 
 33
 In our view the district court's order was fully susceptible of the interpretation placed upon it by appellant. A reasonable person might as easily have believed that the import of the Order was to require retention of original paragraphs 8, 9, and 10 for the reasons stated by appellant. While the district court's interpretation is, of course, just as plausible, we can only conclude that the Order, which was not accompanied by any further explanation, was ambiguous. Cf. Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.P. 11, stating that the district court's determination to impose sanctions may depend on "whether the pleading, motion, or other paper was based on a plausible view of the law." We therefore hold that appellant had reasonable grounds to believe that his amended complaint was in compliance with the district court's order at the time it was submitted, and, accordingly that no violation of Rule 11 could have occurred.[17]
 
 
 34
 We also observe the analogy between the district court's finding of a Rule 11 violation and a finding of contempt: like a contempt citation, the sanction penalized appellant for the district court's perception that he had willfully violated a court order. In view of this similarity, we find applicable our "longstanding, salutary rule in contempt cases [ ] that ambiguities and omissions in orders redound to the benefit of the person charged with contempt." United States v. Christie Industries, Inc., 465 F.2d 1002, 1006 (3d Cir.1972); Ford v. Kammerer, 450 F.2d 279, 280 (3d Cir.1971); see also International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967).
 
 
 35
 In order to cite a person for contempt for violating a court order, two principles, each a corollary of the other, must, among other requirements, be established. The first of these is that it must be proved that the alleged contemnor had knowledge of the order which he is said to have violated. The corollary of this proposition is that the order which is said to have been violated must be specific and definite. These two principles are merged in a general statement which is specifically applicable here: "An order may be so vague or indefinite that, even though the alleged contemnor is chargeable with knowledge of such order, he cannot be punished for doing what he did in view of lack of certainty as to what it prohibited or directed." (citations omitted).
 
 
 36
 In re Rubin, 378 F.2d 104, 108 (3d Cir.1967). The district court's order granting leave to amend was ambiguous. Appellant's understanding of the order was reasonable under the circumstances. Hence, the imposition of sanctions was not warranted and constituted an abuse of discretion. Accordingly, the order of the district court will be reversed.
 
 
 
 *
 Honorable Frederick B. Lacey, United States District Judge for the District of New Jersey, Sitting by Designation
 
 
 [1]
 The jurisdictional issue under Sec. 1291 was raised by the Court sua sponte. Appellant does not contend that there is any other potential ground for appealing the district court's order. The district court did not grant or deny injunctive relief, nor was certification under either Sec. 1292(b) or Fed.R.Civ.P. 54(b) sought or granted
 
 
 [2]
 Although defendant's motion for attorneys fees and costs was brought under Rule 11 and 28 U.S.C. Sec. 1927, the district court's order imposed sanctions under Rule 11 only
 
 
 [3]
 This amount was reduced to $1,294.32 after consideration of appellant's motion to correct judgment
 
 
 [4]
 On May 24, 1984, defendant Holtzman filed a third party complaint against appellant and others alleging breach of privacy and violation of wiretapping laws arising from investigative efforts prior to the filing of the original complaint. See infra note 14. By memorandum opinion and order entered July 26, 1985, the district court granted appellant's motion to strike and/or dismiss the third party complaint as against appellant
 
 
 [5]
 Fed.R.Civ.P. 37(b) provides in part that, if a party fails to obey a discovery order, "the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."
 
 
 [6]
 Although not dispositive on the appealability issue, it is important to note that the sanctioned conduct here does not relate to discovery activity, which is typically related to the merits of the underlying litigation, but, rather, to the district court's perception, wholly collateral to the merits of the case, that appellant deliberately disobeyed a court order granting leave to amend a pleading. "It is settled in this court that discovery matters generally are not reviewable until after final judgment." Gross v. G.D. Searle & Co., 738 F.2d 600, 602 (3d Cir.1984) (citing DeMasi v. Weiss, 669 F.2d 114, 121 (3d Cir.1982); Eastern Maico, 658 F.2d at 947). Accordingly, sanctions for violations of discovery orders are usually considered interlocutory and not immediately appealable. 658 F.2d at 947. See infra at pp. 541-544
 
 
 [7]
 The Ninth Circuit has adopted a broad rule under which "[a]n order imposing a sanction upon counsel, a nonparty in the underlying action, is final and appealable by the person sanctioned, when the sanction is imposed." Optyl Eyewear Fashion International Corp. v. Style Companies, 760 F.2d 1045, 1047 n. 1 (9th Cir.1985) (citing Mesirow v. Pepperidge Farm, Inc., 703 F.2d 339, 345 (9th Cir.1983), cert. denied, 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983)). The Ninth Circuit rule is based upon the application of the Alexander non-party witness doctrine to party's attorneys, whether or not they withdraw from the case after a sanction is imposed. The rationale of applying Alexander in this context, expressed in David v. Hooker, Ltd., 560 F.2d 412, 417 (9th Cir.1977), is that
 [a]n order to pay attorney's fees and expenses ... is similar in both its purpose and effect to fines imposed for civil contempt which are made payable to an opponent to compensate the latter for loss sustained as a result of the contemnor's conduct. As in the case of a civil contempt order, the non-party cannot argue the propriety of the ... sanction for attorney's fees in an appeal from the final judgment as a party to the suit would be able to do. Unless he can obtain a review of the order and sanction at the time it is imposed, a non-party will have no right of review at all. There is no danger of piecemeal review in this type of case as such orders are, for all practical purposes, final. (citations omitted).
 The Second Circuit has found this reasoning persuasive in Cheng v. GAF Corp., 713 F.2d 886 (2d Cir.1983), and has held that an order assessing fees against a party's counsel under 28 U.S.C. Sec. 1927 would be immediately appealable where "there [was] no indication in [the] case that [the party] and his attorney [were] in collusion to create delay or [were] in any other way so closely tied that [the party's] lawyer should not be considered a bona fide third party for purposes of [the] appeal." 713 F.2d at 890. In reaching its decision in Cheng, the Second Circuit distinguished this Court's decision in Eastern Maico, noting that "[t]he fee award here [in Cheng ] bears no relation to anything that occurred in the district court, since the sanction was imposed for appellant's efforts in appellate courts. The propriety of the award here will not be affected by subsequent developments in the case; it is thus unlike an award of fees for frivolous discovery motions, which 'may not be completely separable from the merits of the underlying action.' " 713 F.2d at 890 (citing Eastern Maico, 658 F.2d at 951).
 
 
 [8]
 The plaintiff sought legal expenses and costs related to appellant's review of the Motion to Dismiss and preparation of the Reply Brief in the amount of $7,768.68
 
 
 [9]
 Fed.R.Civ.P. 11 provides, in pertinent part, that:
 [t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that ... it is well grounded in fact and is warranted by existing law or a good faith argument ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 [10]
 28 U.S.C. Sec. 1927 states that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."
 
 
 [11]
 Appendix at 89(a)-90(a). [N.T. Hearing on Attorneys Fees and Costs 9-19-84 pp. 7-8]
 
 
 [12]
 Id. at 90(a). [N.T. Hearing p. 8]
 
 
 [13]
 Id. at 90(a)-94(a). [N.T. Hearing pp. 9-12]
 
 
 [14]
 Appellant, in an effort to discern the corporate structure of defendant Gibson, N.V., had hired a private investigator. Information obtained from the investigator's report led appellant to name the Curacao defendants in the original complaint. Ironically, the district court agreed with appellant that his inclusion of the Curacao defendants in the original complaint was based upon appellant's justifiable reliance on the information contained in the investigator's report, and, hence, that the inclusion of the Curacao defendants in the original complaint was proper and not sanctionable under Rule 11. Appendix at 88(a)-89(a). [N.T. Hearing pp. 6-7]
 
 
 [15]
 Appendix at 90(a)-91(a). [N.T. Hearing pp. 8-9]. See supra p. 542
 
 
 [16]
 Id
 
 
 [17]
 While the district court's sanction order was based solely on a violation of Rule 11, we observe that the sanction would also be unsustainable under 28 U.S.C. Sec. 1927, for appellant, by filing the amended complaint under the circumstances presented, could not be said to have unreasonably or vexatiously multiplied the proceedings. "We too read section 1927 to require a showing of actual bad faith before attorneys' fees may be imposed. If it were otherwise, an attorney who might be guilty of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees under section 1927." Baker Industries, Inc. v. Cerberus, Ltd., 764 F.2d 204, 209 (3d Cir.1985)