GROSS, Charles E.

v.

**G.D. SEARLE & CO., a Delaware-corpo-
ration, and Searle Optical, Inc., a
Texas Corporation.**

**Appeal of EYELAB, INC.**

No. 83–5706.

United States Court of Appeals,
Third Circuit.

Argued May 21, 1984.

Decided June 29, 1984.

As Amended July 10, 1984.

Lee Alan Adlerstein (argued), Jerald D. Baranoff, David N. Buda, Sills, Beck, Cummis, Zuckerman, Radin & Tischman, P.A., Newark, N.J., for appellant.

Arthur R. Schmauder (argued), Stephen R. Long, Shanley & Fisher, P.C., Newark, N.J., for appellee.

Before GARTH and SLOVITER, Circuit Judges, and NEAHER, District Judge.*

**OPINION OF THE COURT**

GARTH, Circuit Judge.

The question presented here is whether Eyelab, a non-party witness which refused to comply with a subpoena, may neverthe-

---

* Honorable Edward R. Neaher, United States District Judge for the Eastern District of New York, sitting by designation.

less maintain this appeal where it is yet to be held in contempt.

Charles E. Gross filed this action against his former employer, Searle Optical, Inc., ["Searle"] to recover financial benefits after his employment with Searle was terminated. Searle refused to pay Gross certain claimed benefits, relying upon the terms of an agreement which provided that all benefits would be forfeit if an ex-employee entered into competition with his former employer within five years of leaving his job at Searle. Searle claimed that Gross's new job with Eyelab, Inc. placed him in competition with Searle, thus violating the terms of the benefits agreement. To prove this contention, Searle sought certain discovery materials from Eyelab by way of a subpoena duces tecum. Eyelab refused to comply with subpoena, and Searle sought a court order directing Eyelab to comply.

At Eyelab's insistence, the district court entered a protective order. The district court then affirmed the magistrate's determination that Eyelab, although not in contempt, had to comply with the subpoena. Eyelab then filed an appeal to this court, challenging the scope of review [1] afforded the magistrate's determination by the district court and the protective order itself. Because we conclude that the order appealed from is not an appealable order, Eyelab's appeal will be dismissed.

## I.

Plaintiff Gross is a former vice president of defendant, Searle Optical, Inc. ["Searle"], the eyecare products division of G.D. Searle & Co.[2] In that position, Gross was in charge of eyeglass frame buying and marketing. As a high-level employee, Gross participated in an incentive program known as the Reward Retention Program which was funded by Searle. Under the terms of the incentive-program agreement, the employee promised not to engage in competition against Searle for a period of five years should he leave the company. The agreement did not seek to prevent competitive employment, but rather conditioned payment of benefits on the employee's agreement not to compete.

In October 1981, Gross ceased working for Searle and in April 1982, he applied for payment of benefits under the Reward Retention Program. However, Searle declined to pay Gross, claiming that Gross had started to work for Eyelab, Inc., one of Searle's competitors, and that he was in fact engaged in competition with his former employer. Gross claimed that his position at Eyelab was merely as an optician and as such, he did not violate the non-competition agreement. Searle continued in its refusal to pay and, on September 14, 1982, this action was instituted.[3]

## II.

During the course of discovery, Searle took the deposition of Mr. Hillman, the president of Eyelab. Mr. Hillman was willing to, and did, answer all of the questions posed to him concerning Gross' employment, but refused to respond to questions about other employees or to produce Eyelab's personnel files and records concerning the compensation and job responsibilities of other Eyelab employees. Two months la-

---

**1.** Eyelab contends that the district court was obliged to review *de novo* the magistrate's proceedings and determinations. Searle, on the other hand, claims that the district court's review was limited to determining whether the magistrate's rulings were clearly erroneous. *Compare* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) [non-dispositive motions] where it has been shown that the magistrate's order is clearly erroneous or contrary to law.") *with* 28 U.S.C. § 636(b)(1)(B) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations [required

by subsections (B) and (C) ] to which objection is made.").

**2.** Defendant G.D. Searle & Co. was dismissed as a defendant pursuant to an order entered by the district court judge on February 14, 1982. The action then proceeded against the remaining defendant, Searle Optical, Inc.

**3.** This action was originally filed by Gross in the Superior Court of New Jersey. The defendants removed the action to federal court based on diversity jurisdiction.

ter, Searle served a subpoena duces tecum on Eyelab,[4] stating that in order to maintain its defense, it must have some access to records and information known only to Eyelab, a non-party witness. Eyelab did not comply with the subpoena, and Searle brought a motion to compel compliance, for sanctions, and to find Eyelab in contempt.

This motion was heard by a magistrate, who denied the contempt motion but issued a protective order requiring compliance with the subpoena and the assessment of costs against Eyelab. That order was affirmed by the district court judge, who reviewed the magistrate's decision and order under 28 U.S.C. § 636(b)(1)(A) and found it neither clearly erroneous nor contrary to law. Eyelab then filed this timely appeal challenging each aspect of the magistrate's pretrial order as affirmed by the district court.

### III.

 Eyelab recognizes that the order appealed from is not final within the meaning of 28 U.S.C. § 1291, but it asserts that this court nevertheless has jurisdiction over this appeal based on the collateral order doctrine first announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Cohen* requires a three-fold showing, each element of which must be met for the doctrine to apply. *Yakowicz v. Pennsylvania*, 683 F.2d 778, 783 (3d Cir.1982). The challenged order must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers &*

*Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). We conclude that Eyelab cannot satisfy the *Cohen* test in this case.

"It is settled in this court that discovery matters generally are not reviewable until after final judgment." *DeMasi v. Weiss*, 669 F.2d 114, 121 (3d Cir.1982); *Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik, G.m.b.H.*, 658 F.2d 944, 947 (3d Cir.1981). Eyelab argues that under *Cohen*, however, as to a *nonparty witness*, a discovery order does conclusively determine the disputed question (in this case, to comply with a subpoena) and does resolve an important issue completely separate from the merits of the action between Gross and Searle.

This court has recently held that "[a] non-party witness may not obtain appellate review of the mere issuance of a discovery order requiring production of information or other action." *DeMasi*, 669 F.2d at 122; *Borden v. Sylk*, 410 F.2d 843, 846 (3d Cir. 1969). In *DeMasi*, an osteopathic physician brought an antitrust action against a Pennsylvania hospital after his application for staff privileges at that hospital was rejected. As relevant to this appeal, the district court issued a discovery order requiring 97 non-party allopathic physicians and 10 individual defendant physicians on the hospital staff to submit sworn statements on their gross incomes derived from the practice of medicine for five years previous, 669 F.2d at 116, ostensibly for the purpose of providing a data base for plaintiffs' expert witnesses who would offer opinions on damage issues. *Id.* at 119. All 107 physicians

---

**4.** Searle admits that although it served the subpoena properly, it inadvertently omitted the "Rider" which listed the specific requests. Searle mailed the rider to Eyelab four days later, as soon as it discovered the oversight. Eyelab argued that that mailing violated Fed.R. Civ.P. 45(c) and thus it should not be penalized for failing to comply. However, as noted by the district court, Eyelab neither filed objections nor made any motion to quash, and in effect forced Searle to take action to seek compliance, including issuing a second subpoena and filing a contempt motion against Eyelab. We therefore find no merit in Eyelab's argument that it

was not in error for failing to comply with the first subpoena.

The subpoena sought production of various categories of Eyelab documents, including all documents reflecting the names and addresses of Eyelab employees (1) who had previously been employed by Pearle Vision Centers (Searle's retail stores), (2) who were employed by Eyelab during 1981, 1982, or 1983 as an optician, and the compensation paid to such people, (3) who served as buyers of lenses, frames and accessories during 1981, 1982, or 1983, and the compensation paid to them. App. 145a.

challenged this discovery order as an invasion of their privacy rights, a claim which this court found to be "serious." Examining the discovery order which was challenged by a petition for mandamus filed by the non-party and defendant physicians, this court distinguished between their situations. We stated that unlike the defendant physicians who "have no immediate right to appeal from civil contempt citations imposed to gain compliance with a discovery order," the non-party witnesses had a remedy by appeal, "but that right must await their willingness to stand in contempt of the district court's order." *Id.* at 122.

A similar result was reached in *Borden*. In that case, Borden sued the endorsers of certain outstanding promissory notes. The maker of the notes, Penrose, was joined as a third-party defendant. Penrose filed cross-claims against Borden, one of which involved Sylvan, a wholly-owned subsidiary of Borden. Penrose moved to depose certain of Sylvan's officers and during the deposition, the president of Sylvan refused to comply, claiming prejudicial disclosure of confidential information. Penrose moved to compel answers, and the district court granted the motion after finding the information relevant to the litigation, and fashioning a protective order to accommodate Sylvan's concerns. Sylvan appealed under *Cohen*, and this court rejected that argument, finding *Cohen* to be "readily distinguishable."

The *Borden* court reasoned that the appellant's argument that the information sought was not relevant to the issues raised in the litigation betrayed itself, "for if the propriety of the lower court's order can be determined only by making reference to the substantive litigation, then clearly it is not a 'collateral' matter within the *Cohen* meaning." 410 F.2d at 846. The *Borden* court also discussed and rejected the appellant's argument, present in this case as well, that the "order should be viewed as appealable because of the potentially harmful impact on its competitive status." *Id.* The court pointed to the protective provisions of the order entered by the district court, and the doctrine that pecuniary injury alone is insufficient to justify appellate review, noting:

> Every interlocutory order involves, to some degree, a potential loss. That risk, however, must be balanced against the need for efficient federal judicial administration as evidenced by the Congressional prohibition of piecemeal litigation. To accept the appellant's view is to invite the inundation of appellate dockets with what have heretofore been regarded as nonappealable matters. It would constitute the courts of appeals as second-stage motion courts reviewing pretrial applications of all non-party witnesses alleging some damage because of the litigation.
>
> To accept the appellant's view is also to invite a geometrical increase in the already unacceptable delay between the date of filing and trial in the metropolitan district courts.... Our overburdened courts have little time or appetite for such protractions.

*Id.*

We find *Borden* to be controlling in this case, and we are not persuaded by Eyelab's attempt to distinguish *Borden*. In *Borden*, the non-party witness was an officer of plaintiff's wholly-owned subsidiary; in *Gross*, the non-party witness is the plaintiff's present employer in a suit involving an employment dispute. In each case the information sought is relevant to—and not separate from—the merits of the underlying dispute, thus failing the second prong of the *Cohen* test.

Relying on *Alexander v. United States*, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), this court has stated that

> the Supreme Court held that until the witness is adjudicated in contempt such an order lacks finality: "Let the court go further and punish the witness for contempt of its order, then arrives a right of review...." *Id.* at 121 [26 S.Ct. at 358]. *See Cobbledick v. United States*, 309 U.S. 323, 326–27 [60 S.Ct. 540, 541–42, 84 L.Ed. 783] (1940). The non-party wit-

nesses therefore have a remedy by appeal, but that right must await their willingness to stand in contempt of the district court's order.

*DeMasi,* 669 F.2d at 122.[5] We are therefore constrained to hold that unless and until Eyelab stands in contempt of the district court order requiring compliance with Searle's subpoena, this court lacks jurisdiction to entertain an appeal from such an order.[6]

## IV.

■ In arguing that we have appellate jurisdiction even though Eyelab has not been cited for contempt, Eyelab has called our attention to a recent line of cases beginning with *David v. Hooker, Ltd.,* 560 F.2d 412, 415 (9th Cir.1977), in which the Ninth Circuit has held that an order compelling a nonparty to pay attorney's fees and costs is a final order within the meaning of 28 U.S.C. § 1291. *See Kordich v. Marine Clerks Assn.,* 715 F.2d 1392, 1393 (9th Cir.1983) (per curiam); *Reygo Pacific Corp. v. Johnston Pump Co.,* 680 F.2d 647, 648 (9th Cir.1982); *Liew v. Breen,* 640 F.2d 1046, 1048 (9th Cir.1981); *Cf. Cheng v. GAF Corp.,* 713 F.2d 886, 889–90 (2d Cir. 1983) (award of attorney's fees, costs, and expenses against non-party under 28 U.S.C. § 1927 held immediately appealable where award was independent of underlying substantive order). Eyelab urges this court to follow the Ninth Circuit precedents, arguing that "[i]f the appeal is dismissed for want of jurisdiction, Eyelab will never have an opportunity to contest the magistrate's award of attorney's fees and costs against it and in favor of Searle unless it is cited for contempt." (Reply Br. at 9–10).[7] However, we are not persuaded by the Ninth Circuit's reasoning, and we decline to follow it in this case.

As we understand Eyelab's argument on appeal, it has contended that we should consider Eyelab's non-compliance with Searle's subpoena immediately appealable, an argument which we have rejected in the absence of Eyelab being cited for contempt. *Cf. David v. Hooker, Ltd.,* 560 F.2d 412, 416 (9th Cir.1977) (part of district court order assessing fees and costs immediately appealable, but part of order requiring non-party to comply with discovery request is "interlocutory and non-appealable"). Eyelab has never suggested that we fragment the order from which its appeal has been taken into appealable and non-appealable segments and we decline to do so on our own. "This court has consistently refused to read expansively the final order doctrine, in order to further the important congressional goal of avoiding piecemeal litigation," *see United Steelworkers of*

---

**5.** Eyelab argues that this court should follow the Tenth Circuit decision in *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 996 (10th Cir.1965), which reached the contrary conclusion. The *DeMasi* court, which we cite in text, explicitly rejected the holding of *Covey, see* 669 F.2d at 122 n. 11, and we are bound by the prior decisions of our court.

**6.** This court has noted the narrow exceptions that exist to the finality rule, none of which are applicable here. In *In re Grand Jury (Schmidt),* 619 F.2d 1022, 1025 (3d Cir.1980), this court stated that

in contrast with the *Alexander-Cobbledick-Ryan* rule on finality, it has been recognized that when a party, *other than the one to whom a subpoena has been addressed,* moves to quash the subpoena, the denial of his motion disposes of his claim fully and finally. *Perlman v. United States,* 247 U.S. 7 [38 S.Ct. 417, 62 L.Ed. 950] (1918). *See also Gravel v. United States,* 408 U.S. 606, 608 n. 1 [92 S.Ct. 2614,

2619 n. 1, 33 L.Ed.2d 583] (1972); *United States v. Nixon,* 418 [U.S. 683] at 691 [94 S.Ct. 3090 at 3099, 41 L.Ed.2d 1039 (1974)].... We have recognized that the *Alexander-Cobbledick-Ryan* rule restricting appellate review is limited to situations where the contempt route to a final order is available to the appellant. (Emphasis added).

Here, Eyelab is a subpoenaed non-party and hence falls within the *Alexander-Cobbledick-Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971) rule.

**7.** The record does not disclose whether Eyelab has obtained a stay respecting payment of the fees and costs award or has paid the award, or whether Searle has sought execution on the award. *See* Fed.R.Civ.P. 69. Indeed, that subject has not been raised by any party. We assume without deciding that the party against whom such an award is made may seek a stay of execution until review is available.

*America v. Union Railroad Co.*, 648 F.2d 905, 909 (3d Cir.1981).

We would be defeating our "final order" policy were we to recognize the type of piecemeal appeals that Eyelab impliedly urges upon us. We view Eyelab's position in this case, even though it is a non-party, as analogous to a party judgment involving multiple counts where disposition (i.e., summary judgment) is granted with respect to one count, but denied as to the others. In such a case, the aggrieved party—that is, a party against whom the judgment was granted—may not appeal until resolution of all the counts has been had or a certification under Fed.R.Civ.P. 54(b) has been obtained. The present case is analytically no different from the situation just described, even though we acknowledge that Eyelab is a non-party.

The focus of Eyelab's present position is on the substantive aspects of the magistrate's order which requires compliance with a subpoena. If Eyelab is cited for contempt for its refusal to comply with the subpoena, the magistrate's order (affirmed by the district court)—including the award of fees and costs—may then be reviewed in its entirety by this court. Until that time, however, an independent review of fees and costs involving consideration of, and therefore defacto review of, the substantive aspects of the Magistrate's order, is not available. Were it otherwise, such an order would result in two appeals, one dealing with a fees and costs award—which necessarily would concern itself with the underlying merits—and the second dealing with the merits alone when the substantive features of the order became ripe for appeal.

■ Eyelab is not in a situation such as that described in *Cheng v. GAF Corp.*, 713 F.2d 886 (2d Cir.1983) where the fees and costs award had no connection with the merits of the underlying action. In *Cheng,* the district court had awarded to GAF, the appellee, attorney's fees and expenses for the costs it had incurred when it was obliged to defend against Cheng's allegedly unreasonable and vexatious attempts to disqualify GAF's counsel, claiming that the GAF attorney had been privy to confidential information regarding Cheng's suit. At first that motion had been denied; it was subsequently reversed by the Court of Appeals, and that reversal was ultimately vacated and remanded in light of the Supreme Court holding that denial of a disqualification motion could not be reviewed on appeal until after trial. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). Thereafter, Cheng sought a writ of mandamus which was denied. GAF then moved pursuant to 28 U.S.C. § 1927 (conduct which increases costs unreasonably and vexatiously) for an award of attorney's fees and costs by reason of having to defend against Cheng's disqualification efforts. The district court assessed fees and costs against Cheng's counsel, not for the motion before the district court but for the petitions filed in the appellate courts. The Second Circuit entertained the appeal, holding in essence that the fees and costs award was independent of other proceedings:

> The fee award here bears no relation to anything that occurred in the district court, since the sanction was imposed for appellant's efforts in appellate courts. The propriety of the award here will not be affected by subsequent developments in the case; it is thus unlike an award of fees for frivolous discovery motions, which "may not be completely separable from the merits of the underlying action."

713 F.2d at 890. *See also Eastern Maico v. Maico-Fahrzeugfabrik,* 658 F.2d 944, 947 (3d Cir.1981). Where the fees and costs award is related to, affected by, and not completely separable from the merits of the underlying order which gave rise to the fees and costs award, it is appropriate to withhold independent review of that award until final resolution of the underlying substantive order. *See* 658 F.2d at 951.

Here, the award of fees and costs to Searle was inextricably linked to the subpoena served on Eyelab and Eyelab's refusal to furnish the subpoenaed information.

In such a circumstance, the award of fees and costs is necessarily contingent upon the grant or denial of the relief sought. Obviously if Eyelab prevailed, no fees and costs would be awarded to Searle. That determination, however, must await a decision on the merits, which cannot be reached unless we have jurisdiction to review the district court's order. In the case of a non-party litigant such as Eyelab, review of all aspects of an order, which itself cannot qualify as a final order, will be had only when and if Eyelab is cited for contempt for its refusal to comply with the subpoena.

### V.

Because we lack jurisdiction of Eyelab's appeal, we are without authority to decide the merits of Eyelab's contentions. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1980). We therefore expressly intimate no views as to Eyelab's claim which challenges the proper scope of review to be accorded by the district court to a magistrate's discovery order concerning a nonparty witness. *See* note 1 *supra*.

### VI.

Eyelab's appeal will be dismissed for lack of appellate jurisdiction.